**F. & C. ENGINEERING CO., Inc., et al.,**
Appellants,

v.

**W. H. MOORE et al., Appellees.**

No. 13107.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 6, 1957.

Rehearing Denied March 20, 1957.

**324**

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellants.

Robert D. Nogueira, Beeville, for appellees.

BARROW, Justice.

This is an appeal by F. & C. Engineering Co., Inc., and the Aetna Casualty & Surety Company, its surety, two of the defendants in the trial court, from the judgment of the District Court of Bee County in favor of W. H. Moore et al., the plaintiffs, and against the defendants, in a case tried to the court without a jury.

Plaintiffs, W. H. Moore et al., formerly doing business as Coast Materials, which at all times for the purpose of this litigation was a partnership, but for clarity and convenience will be called materialman, engaged in the business of supplying ready-mix concrete to users of the same in Bee County and the surrounding area. The defendant F. & C. Engineering Co., Inc., hereinafter called General Contractor, was the general contractor under Navy Contract NOy–81871, for the construction of a high-speed apron refueling system at Chase Field, near Beeville; the defendant Aetna Casualty & Surety Company, hereinafter called Surety, was the general contractor's surety on the performance and payment bond, guaranteeing among other things that the general contractor would promptly pay for all labor and materials furnished in the prosecution of the work under the contract. The general contractor entered into a contract with the defendant O & W Construction Company, hereinafter called subcontractor, a partnership composed of J. Y. Orms and Gene Weatherford, subcontracting to them part of the work under the general contract. The materialman furnished to the subcontractor ready-mix concrete used in connection with the subcontract, aggregating $10,982.50. The subcontractor and its two partners all became insolvent and were unable to pay the materialman.

At the conclusion of the trial judgment was rendered in favor of the materialman and against the subcontractor, the general contractor and the surety, for the principal sum of $4,982.50, plus interest, and $1,627.-50 attorney's fees. From this judgment the general contractor and the surety have appealed. The trial court filed findings of fact and conclusions of law.

The appellants have assigned two points claiming error. First, it is contended that rendering judgment for $2,000 received by the subcontractor out of $8,000 paid for the general contractor, by check made payable to both the materialman and the subcontractor, was error. Second, it is contended that rendering judgment against appellants for attorney's fees was error.

Considering the first point, we find that the record reveals: That the facts with reference to the amount due at the time the materialman handled distribution of the checks and the proceeds thereof are with-

out dispute; and that the manager of the materialman issued a check for $2,000 out of the $8,000 check to the subcontractor, upon the representation by the subcontractor that the money was needed to pay for labor and other miscellaneous expenses.

The question before this Court is whether or not the advancement of this $2,000, by the materialman to the subcontractor, has the effect of releasing the general contractor and its surety from liability to the extent of this amount.

On June 20, 1955, the materialman wrote the general contractor, advising that the subcontractor had an unpaid account of $10,406 (later increased to $10,982.50) due the materialman, enclosing its statement in this amount and asking payment thereof by a check payable to subcontractor and materialman jointly. Under date of June 27, 1955, the general contractor wrote the subcontractor, transmitting its check in the amount of $,8000, payable jointly to the order of the subcontractor and the materialman, which check was an advance against subcontractor's then current estimate. A copy of this letter was sent to the materialman. The check, which bore materialman's address, was endorsed to the materialman by the subcontractor and the materialman issued its own check in the amount of $2,000 to the subcontractor, retaining $6,000 of the proceeds.

██ It is conclusively established under the authorities, that a creditor who advances money to a subcontractor, even if the money is advanced to pay for labor and materials, is not entitled to the benefit of the liens given laborers and materialmen, nor to the benefit of the bonds required of general contractors to secure the payment for labor and materials. In the case of Verschoyle v. Holifield, 132 Tex. 516, 123 S.W.2d 878, 883, Justice Smedley states the above rule and cites numerous authorities in support of his statement.

While the situation presented by the facts in this case has never been passed upon by the Courts of this State, the Supreme Court of South Carolina, in the case of City Lumber Company v. National Surety Corporation, 229 S.C. 115, 92 S.E.2d 128, lays down the rule which we believe is controlling in this case.

That was a suit by a materialman against the surety on the performance bond of a construction contract. Under the terms of the bond the contractor and the surety were obligated to pay for all labor, materials and equipment performed and furnished on the job. The materialman, City Lumber Company, furnished paint to the subcontractor, Drake, for which there was a balance unpaid totaling $2,251.74. Drake and the contractor, Southern Construction Company, both refused payment. The trial court held for the materialman, and allowed judgment of $2,251.74.

During the performance of the contract, Drake and the manager of the City Lumber Company went to the vice president of Southern Construction Company and urged him to make payment to Drake on his contract so that Drake might pay on his paint accounts. The vice president stated that he thought it would be some time before a payment would be submitted, and offered little encouragement about an immediate payment. However, on February 15, 1952, a check drawn on the Southern Construction Company was sent to Drake's foreman on the job, payable to the *joint order* of Drake and the City Lumber Company in the amount of $3,500, earmarked "advance on contract."

On the same day of receipt of the check Drake called the manager of the City Lumber Company and told him of the check and asked his permission to endorse the name of City Lumber Company on the back of the check in order that he might collect it and pay his pressing labor bills, and promised to make a substantial payment on the account of City Lumber Company. Mann, the manager of City Lumber Company, agreed to this request, and several days later received from Drake a check for

$500 as payment on the paint account. Drake still had work to do on the contract and continued purchasing paint from City Lumber Company until February 21, 1952, thereby increasing the paint account by $234.38 from the date of receipt of the check to the date he discontinued purchasing paint.

Mann testified that he was never given any notice that he was to collect the City Lumber Company's account from the check, and claimed that had he known he was expected to do so, he would not have authorized the endorsement of the check.

The Court stated:

"We think the action of respondent in endorsing the check without collecting the past due account of Drake, which then amounted to $2,517.36, released the Southern Construction Company and its surety from liability for such indebtedness. It is true that the check for $3,500 represented appproximately $1,000 more than the amount Drake then owed to respondent and that the Southern Construction Company did not expressly request respondent to collect from the check the unpaid paint bills. But the only reasonable inference warranted by the circumstances is that respondent was made a co-payee to enable it to collect whatever amount might be owing to it by Drake. If the Southern Construction Company had intended to vest in Drake the right to the unrestricted use of the proceeds of the check, Drake would have been made the sole payee as was done when checks were previously issued to him.

"* * * As an experienced business man, respondent's manager was bound to have known, without being specifically so advised, that he was expected to collect respondent's account from the proceeds of the check. Instead of doing so, he authorized Drake to endorse respondent's name on the back and use all of the proceeds except $500. He may have done this through a desire to continue selling paint to Drake, thinking that the latter would continue on the job and pay respondent's indebtedness from subsequent payments made by the Southern Construction Company, but such considerations cannot be allowed to penalize the prime contractor and its surety.

"The $3,500 check was given for the purpose of satisfying claims which the prime contractor and its surety were obligated under the terms of the bond to pay. The source of the money was known to the respondent. The surety was equitably entitled to have the check applied to the discharge of the debts for which it was bound but this was not done because of the negligence of respondent in empowering Drake to use the funds for any purpose which he desired. This is not a case of nonaction on the part of the creditor, but positive and affirmative action injuriously affecting the surety.

"It is true that Drake may not have consented to the payment from the proceeds of the check of all the indebtedness owing by him to respondent and that if respondent had insisted that this be done the check may not have been negotiated, but if the check had not been accepted by the parties for the purpose for which it was obviously issued, the prime contractor could have taken other steps to protect its liability."

 While in the present case the trial court concluded, upon findings of fact supported by sufficient evidence, that the general contractor was a primary obligor, insofar as the materialman was concerned, notwithstanding the fact that the general contractor and in turn its surety were each bound to pay the materialman's bill by the terms of the bond, yet the materialman had

within his control $8,000 which he could and should have applied thereon. He did not do so, but, on the contrary, turned $2,000 of the money over to the subcontractor, on the representation of the subcontractor "that he wanted to use it to pay labor and miscellaneous obligations." It was not the province of the materialman to advance money to the subcontractor to pay "labor and miscellaneous obligations," nor to determine how much the subcontractor needed, if any, for that purpose. The materialman in this case having done so and having advanced to the subcontractor $2,000 by its own check, the materialman became a simple money creditor of the subcontractor and thereby released both the general contractor and its surety as to said amount. Verschoyle v. Holifield, supra, and City Lumber Company v. National Surety Corporation, supra. We sustain appellants' first point.

We next consider the second point. This suit is upon account for *materials furnished,* so that undoubtedly attorney's fees may be recovered as against the parties to whom they were furnished. Art. 2226, Vernon's Ann.Civ.Stats.

■ The trial court found that the general contractor, for a valuable consideration, promised the materialman that it would be responsible for and guarantee payments for all material delivered to the subcontractor. That the promise was made to induce them and did induce them to deliver the material, and but for such promise they would not have made delivery. This finding has not been challenged. Under these circumstances, the general contractor was not a stranger to the contract, but was a primary obligor and liable for attorney's fees. Art. 2226, supra; Mc-

Camant v. Batsell, 59 Tex. 363; Duree v. Aetna Ins. Co., Tex.Civ.App., 66 S.W.2d 764. We are of the opinion, however, in view of the disposition we have made of the case, that the attorney's fees allowed by the trial court are excessive and should be reduced from $1,627.50 to $1,000 as against the general contractor. These attorney's fees are not recoverable as against the surety. Its obligation to pay arose from the bond sued upon and is controlled by its provisions to pay for labor and materials furnished.

In accordance with the views here expressed, the judgment of the trial court will be reformed by decreeing that appellees recover of the appellants, general contractor and surety, jointly and severally, the sum of $2,982.50, together with interest thereon at the rate of 6% per annum from July 2, 1955, and that appellees recover of F. & C. Engineering Co., Inc., the further sum of $1,000.00 as attorney's fees. As so reformed the judgment is affirmed.

On Motion for Rehearing.

■ We have concluded that in view of the fact that appellants' point on attorney's fees was not broad enough to cover the question of excessive attorney's fees, we were in error in reducing the attorney's fees from $1,627.50 to $1,000.

The judgment of the trial court will be reformed to read as stated in our opinion of February 6, 1957, with the exception that the attorney's fees will be in the sum of $1,627.50 instead of $1,000, and as thus reformed the judgment is affirmed.

Appellees' motion will be granted to the extent above indicated and in all other respects overruled.