**NATIONAL SURETY CORPORATION,**
Appellant,

v.

**UNITED STATES of America for the Use and Benefit of OLMOS BUILDING MATERIALS COMPANY,** Appellee.

No. 20603.

United States Court of Appeals
Fifth Circuit.

Jan. 13, 1964.

Rehearing Denied Feb. 21, 1964.

Dayton G. Wiley, Green, Green & Wiley, San Antonio, Tex., for appellant.

William P. Dobbins, Dobbins & Howard, San Antonio, Tex., for appellee.

Before TUTTLE, Chief Judge, GEWIN, Circuit Judge, and BREWSTER, District Judge.

GEWIN, Circuit Judge:

The cause of the controversy in this suit is the allowance of attorneys' fees in a suit by the supplier of materials against the prime contractor and its surety.

The contract under consideration was primarily between Madden Company, Inc., as prime contractor, and the United States of America, which provided for the improvement and rehabilitation of certain properties at Kelly Air Force Base in Bexar County, Texas. The use plaintiff, Olmos Building Materials Company, furnished materials used in the prosecution of the work. National Surety Corporation was surety on the bond of Madden Company, Inc., as principal, by the terms of which the principal and the surety bound themselves jointly and severally for the amount of the bond conditioned as follows:

"that if the principal shall *promptly* make payment to all persons supplying labor and materials in the prosecution of the work provided for in said contract and any and all duly authorized modifications of said contract, then said obligation shall be void, otherwise to remain in full force and virtue." [1] (emphasis added.)

Without question the bond was accepted and approved; Olmos furnished materials to Madden on open account, which materials were used in the prosecution of the work to be done pursuant to the contract; Madden unqualifiedly promised and agreed to pay Olmos the sums charged for the materials; and after the allowance of all just and lawful offsets, payments and credits, the sum of $2,295.24 was past-due and unpaid when plaintiff filed suit; and Madden had failed and refused to pay any part of said sum.

The last delivery date of the building materials and products involved was made by Olmos to Madden on May 14, 1962, over 90 days prior to but less than one year before suit was filed. On September 13, 1962, Olmos filed a written proof of claim with National Surety in which clear notice of the default on the part of Madden was given. Olmos made demand for payment on Madden and on National Surety, which demand was ignored for more than 30 days after it was made. At the time the proof of claim, notice of default, and demand for payment were made, attorneys for Olmos made the following statement in the letter transmitting the same:

"* * * However, if this claim is paid *promptly*, no suit will be filed and, therefore, no attorneys' fees nor costs of Court will be added to the claim. By promptly, we mean at least within thirty days from ths (sic) date." (emphasis added.)

National Surety failed and refused to make payment, whereupon Olmos employed counsel, obligated itself for attorneys' fees and filed suit on October 25, 1962.

National Surety filed an answer on November 15, 1962. On January 11, 1963, National Surety tendered into the registry of the court the above mentioned sum of $2,295.24 plus interest and court costs, making a total payment of $2,355.68. The tender was made shortly before pre-trial hearing. A pre-trial order was entered on January 29, 1963. The Clerk was directed to pay the sum tendered to Olmos without prejudice to the right of Olmos to prosecute its claim for reasonable attorneys' fees incurred, and to be incurred on appeal, and without prejudice of National Surety to contest its obligation to pay attorneys' fees. The principal, Madden Company, Inc., defaulted.[2]

1. The record does not contain the exact language of the bond. Apparently, the bond was not introduced into evidence. The above quotation is taken from the brief of the appellee, and on oral argument the parties agreed that it is correct.

2. On January 29, 1963, the trial court entered an order pursuant to a motion of Olmos setting forth an agreement of the parties as to the tender and attorneys' fees, which order directed the Clerk to pay the tendered funds to Olmos "* * * without prejudice to the right of the Plaintiff and Use-Plaintiff to prosecute the claim of the Use-Plaintiff for reasonable attorneys' fees incurred in this matter and to be incurred on appeal and without prejudice of said Defendant to contest its obligation to pay said amount."

The trial court found that Olmos has employed competent counsel to file suit and had agreed to pay reasonable attorneys' fees for services to be rendered; that up to the time of the entry of judgment, counsel for Olmos had spent approximately 40 hours in the preparation of prosecution of the claim; that the evidence showed that such services were valued at the rate of $25.00 per hour; and that approximately half of such time was devoted to the case up until November 15, 1962, when National Surety filed its answer,[3] and half of such time was devoted subsequent to that date. The court concluded that Olmos was entitled to recover jointly and severally from Madden, as principal, and National Surety, as surety, reasonable attorneys' fees, including attorneys' fees on appeal if incurred; and the court fixed as reasonable attorneys' fees the sum of $750.-00 " * * * for attorneys' services up to and including entry of judgment." Jurisdiction was reserved to fix attorneys' fees to which Olmos " * * * is entitled should this case be appealed until a reasonable time after all appellate action has terminated and the mandate of the appellate court filed herein." The record further discloses that the reasonableness of the fee awarded by the court is not questioned by National Surety.

On this appeal, National Surety contends that it is not liable for attorneys' fees because there is no Texas statute specifically authorizing the same, and that the contract between the parties does not authorize such fees. It is further contended that even if such fees are allowable, the trial court erred in allowing fees for services " * * * up to and including entry of judgment"; that no

fee should be allowed for services rendered after it admitted liability and tendered principal and interest into the registry of the court; and further, that attorneys' fees for services rendered on appeal are not authorized.

█ Olmos and National Surety are directly opposed in their contentions as to the proper interpretation of Article 2226, Vernon's Ann.Civ.Stats.,[4] the former claiming that the statute authorizes attorneys' fees and the latter claiming that it does not. Both parties cite numerous Texas decisions, each contending that the decisions are favorable to their diametrically opposed contentions. There seems to be little dispute as to the rule that the principal contractor, in this case Madden, is liable for attorneys' fees under the above mentioned statute. The dispute arises as to whether such fees are recoverable against the surety of the principal contractor.

No useful purpose would be served in undertaking to analyze every Texas case cited; or in drawing the fine distinctions which seem to be necessary in order to reconcile all of the opinions involved in the varied fact situations presented by the cases. It is sufficient to say that none of the cases cited is directly and exactly in point, and the fact situations presented by the Texas cases are not sufficiently similar in the essential and controlling factual details here under consideration to be conclusive.

In addition to numerous other cases, National Surety relies heavily on Mundy v. Knutson Construction Co., 156 Tex. 211, 294 S.W.2d 371; and F & C Engineering Co. v. Moore, 300 S.W.2d 323,

---

3. Tender into the registry of the court was made on January 11, 1963, as noted above.

4. "Art. 2226. 2178–9 Attorney's fees "Any person having a valid claim against a person or corporation for personal services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured, or suits founded upon a sworn account or accounts,

may present the same to such person or corporation or to any duly authorized agent thereof; and if, at the expiration of thirty (30) days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such person or corporation, he may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney."

(Tex.Civ.App.1957) err. ref'd, n. r. e. The Mundy case asserts the general principle that a surety is not liable for attorneys' fees unless provided for by statute or by contract between the parties. It should be observed however that there was no express provision to pay attorneys' fees in the contract under consideration in the Mundy case, but the performance bond contained an agreement to " * * * repay all costs and expenses * * * " incurred in the prosecution of any suit maintained against the principal for breach of contract or for breach of the surety bond. The court interpreted the language to include attorneys' fees and concluded:

> "Since the wording of our bond expressly provides for payment of 'all costs and expenses' incurred in the prosecution of a suit or suits on a breach of the construction contract, or on that very bond, we feel attorneys' fees so incurred was a proper measure of recovery by Knutson. An attorneys' fee for the prosecution of a suit is an 'expense' incurred."

In Mundy the court further reviewed other cases which allowed attorneys' fees in suits against sureties where there was no direct, express agreement to pay attorneys' fees, but where there were provisions to pay all damages, costs, charges or expenses. In the F & C Engineering case, the court held the general contractor liable for attorneys' fees because the general contractor made a direct, special promise to the materialman that it would be responsible for and guarantee " * * payments for all material delivered to the subcontractor." The court concluded that the promise was made to induce the delivery of the material, and that such delivery would not have been made without the promise. Article 2226, Vernon's Ann.Civ.Stats. was held applicable and attorneys' fees were awarded against the general contractor. The court held the surety not to be liable and used only the following language with respect to the subject:

> "These attorney's fees are not recoverable as against the surety. Its obligation to pay arose from the bond sued upon and is controlled by its provisions to pay for labor and materials."

Unfortunately, the opinion does not quote the terms of the surety bond; nor is it entirely clear whether the guarantee made by the general contractor was taken into consideration at the time the surety bond therein mentioned was executed. It may well be said that F & C Engineering stands for the proposition that where a general contractor makes a special contract agreeing that it would be responsible for and guarantee payment " * * for all material delivered to the subcontractor," the general contractor, as guarantor or surety, is liable for attorneys' fees. There was no provision in the guaranty contract relating to the payment of attorneys' fees.

The latest Texas case which has come to our attention and the one nearest in points, is Ferrier Bros., et al. v. Brown, et al., 362 S.W.2d 181, (1962 Eastland Ct.Civ.App.) err. ref'd, n. r. e. In Ferrier, reliance was placed upon our case of United States for Use and Benefit of Caldwell Foundry & Machinery Co. v. Texas Construction Co., 5 Cir. 1955, 237 F.2d 705, wherein our court held in a Miller Act case, that attorneys' fees are recoverable against the surety, and that the question is governed by state law. The opinion in Ferrier also relies upon the McGregor Act, Texas Statute, Article 5160, par. A, effective January 1, 1960, which was taken from the Miller Act.[5]

Finally, it should be noted that in Mundy the court concluded that attorneys' fees were recoverable as a part of costs and expenses incurred in the prosecution of a suit on a breach of the construction contract, " * * * or on that very bond * * * ," referring to the surety bond. In the instant case, the

---

5. The opinion in Ferrier states:
"The material portions of the Tex- as Statute, Article 5160, par. A, has been taken from the Miller Act."

surety undertook to assure "prompt payment" to persons supplying labor and material. When the chronology [6] of events is considered together with the other circumstances of this case, it is clear that the prime contractor defaulted in making "prompt payment", and further that the surety also defaulted and breached the condition of the bond when it failed to make "prompt payment", necessitating the employment of counsel and the institution of legal proceedings. We conclude, therefore, that the trial court was correct in its conclusion that the surety is liable, under the peculiar facts of this case.

■■■ We come now to a consideration of the contention of National Surety that even if attorneys' fees were allowable, the court committed error in allowing fees for services rendered subsequent to the date when liability was admitted and funds were " * * * unconditionally tendered * * * " into the registry of the court; and for concluding that Olmos is entitled to such fees for services rendered on the appeal of this case. As a matter of fact, at the late date when the tender was made, it was agreed by the parties and ordered by the court that such tender was made without prejudice to either party to contest the matter of attorneys' fees; and as heretofore stated, the record shows that the reasonableness of the fee awarded by the trial court is not questioned. The evidence is without dispute that the attorneys spent approximately 40 hours and that the rate of $25.00 per hour was a reasonable charge for such services. After considering all factors involved, the court allowed a fee of $750.00. Considering all of the circumstances involved, including the time of tender, the services rendered, the fee allowed, and the period over which the services were rendered, together with all other factors in the case, we find no merit in the contentions of National Surety. Only 18 days elapsed from the time the tender was made until the date of the pre-trial order, and the order directing the payment of the funds to Olmos without prejudice. Final judgment was entered approximately 3 weeks later. We find the order of the court fixing the fee reasonable, proper and without error. In view of the reservation of the question as to attorneys' fees when the tender was made, and the fact that most of the services were rendered prior to the date of tender, we further conclude that it was entirely proper for the court to make the provision as to attorneys' fees for services on this appeal.

What constitutes a reasonable attorneys' fee for services rendered upon appeal in this court should be determined by the District Court. The judgment is affirmed and the cause remanded for the purpose of allowing the District Court to fix such attorneys' fees for services on appeal.

TUTTLE, Chief Judge (dissenting).

With deference to the views of my colleagues, I dissent. The parties are in agreement that under the Texas laws attorneys' fees may not be recovered in a suit of this character, unless provided for by statute or agreed to by the parties in their contract. The only cases in which the Texas courts have permitted a recovery of attorneys' fees are cases in which the court has construed that the

6. The following is a recapitulation of the chronology involved:

May 14, 1962: Date of last delivery of building materials by Olmos to Madden.

Sep. 13, 1962: Proof of claim, notice of default, and demand for payment.

Oct. 25, 1962: Suit filed.

Nov. 15, 1962: Answer by National Surety.

Jan. 11, 1963: Tender of funds into the registry of the court.

Jan. 29, 1963: Pre-trial order and order to pay over funds to Olmos without prejudice as to attorneys' fees.

Feb. 19, 1963: Judgment.

surety contract itself embodied such an agreement, e. g. Mundy v. Knutson Construction Company, 156 Tex. 211, 294 S. W.2d 371. The court in that case permitted a recovery against a surety because the bond itself provided that the surety was to "repay all costs and expenses * * * [Knutson] may incur in the prosecution of any suit or suits, which they [it] may maintain against said principal on account of any breaches of said contract, or of this bond * *." It is difficult for me to see how a suit on a bond having such language as that would be authority for a decision of the court in the case before us. The language in the bond we are to construe was identical with that in F & C Engineering Co. v. Moore, Tex.Civ.App., 300 S.W.2d 323, in which the Court of Civil Appeals (San Antonio Division) found that attorneys' fees could be recovered against the principal but held that no recovery could be had against the surety since there was no provision in the bond to do more than pay promptly for materials furnished.

It is difficult for me to see what reliance can be placed on the case of Ferrier Bros. v. Brown, Tex.Civ.App., 362 S.W.2d 181, to support the majority opinion. Having held in the Ferrier Bros. case that there was no doubt but that a recovery could be had against the principal, the court then said "Any doubt as to appellees' right to also recover attorneys' fees from Ferrier Brothers' surety is dispelled by the decision of United States for Use and Benefit of Caldwell Foundry & Machine Company v. Texas Construction Company, 5 Cir., 237 F.2d 705 * * *." The opinion then quotes from an opinion of this court which raised the question on its own motion, and then as stated, "knock[ed] it down with the observation that, in suits under the Miller Act, the recovery of interest, costs, and attorneys' fees is governed by the state law." Our opinion then cited an Alaska District Court case and an Arkansas District Court case for the proposition that allowance for attorneys' fees was proper. No Texas decision was cited.

·I think that in light of the clear Texas jurisprudence, as disclosed by Mundy and F & C Engineering, supra, this Court is required to determine that the judgment should be reversed and the trial court directed to enter an order denying the right to recover on a bond worded like the one here in contest.

Rehearing denied; TUTTLE, Chief Judge, dissents.