**TRANSAMERICA INSURANCE COM-PANY, Appellant,**

v.

**RED TOP METAL, INC., Appellee.**

No. 22707.

United States Court of Appeals
Fifth Circuit.

Oct. 18, 1967.

---

Dayton G. Wiley, Law Offices of Dayton G. Wiley, Peter N. Plumb, Allen Lewin Plunkett, San Antonio, Tex., for appellant, Transamerica Insurance Co.

Jack Garey, Austin, Tex., for appellee.

Before WISDOM, BELL and AINSWORTH, Circuit Judges.

WISDOM, Circuit Judge:

This case involves the liability of a Miller Act surety for attorneys' fees.

Red Top Metal, Inc., a subcontractor on a federal construction project at the Bergstrom Air Force Base in Austin, Texas, furnished labor and materials to the Jack Collins Construction Company, the general contractor. Collins withheld certain payments from Red Top because of disputes over various delays and extras on the project. When Collins refused to pay, Red Top brought suit against the general contractor and its surety, the appellant in this case. Before trial, the surety paid the principal claim. The parties stipulated that they would "proceed to judgment only on the question of the recoverability of attorneys fees and that the remainder of plaintiff's cause of action * * * be dismissed with prejudice".[1] The parties

---

1. The surety argues that since the demand was dismissed, leaving only the ancillary claim for attorneys' fees, there was no case before the court. For under Texas law suit may not be brought for attorneys' fees only. Huff v. Fidelity Union Life Insurance Co., 1958, 158 Tex. 433, 312 S.W.2d 493. This contention assumes that the claim for attorneys' fees is created and controlled by state

also stipulated that reasonable attorneys fees would be $1000. The court below found that under the Miller Act and "the substantive law of the State of Texas", the plaintiff was entitled to attorneys' fees. We reverse.

## I.

The Miller Act, 40 U.S.C. § 270a–270d, requires a "payment bond * * * for the protection of all persons supplying labor and material in the prosecution of the work" under a government construction contract. A plaintiff suing on the bond is denied his usual option of a state forum. The Act requires him to sue in a United States district court and in the name of the United States. The surety contends that since the Miller Act is silent on the subject of liability for attorneys' fees, state law controls. We hold (1) that federal law controls; (2) that since the Miller Act is silent on the question of attorneys' fees, the purpose of the Act must be examined for guidance in the resolution of this question; and (3) that the purpose of the Act suggests incorporation of state law. State law, therefore, does not operate of its

law. The surety concludes that the court would have jurisdiction to decide this issue only by virtue of the *Hurn* doctrine of pendent jurisdiction. Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. But, so runs the argument, *Hurn* requires no loyalty in a case where the sole federal issue has become moot before trial.

The *Hurn* doctrine is inapplicable. The claim based on supplying labor material and the claim for attorney's fees are not separate grounds for the same cause of action; not "different avenues seeking to reach the same end * * * alternative theories of recovery for a single wrong". The claim for attorneys' fees is one ingredient of the supplier's claim for protection of his statutory right under the Miller Act.

Jurisdiction admittedly attached when suit was filed on the Miller Act bond. The district court therefore continued to have jurisdiction, regardless of the disposition of the labor-and-material element of the claim. Even if it be assumed that the right to attorneys' fees is state-created and severable from the principal claim, the district court would have ju-

own force to determine the scope of the surety's liability on a Miller Act bond: The primary law is the Miller Act itself.

■ A. We see the claim for attorneys' fees as an element of the supplier's federal statutory right to protection under the Miller Act. This right does not originate in the common law or in Texas statutes. It comes from a congressional statute providing for a "payment" bond giving "protection" to all persons supplying labor and materials on a government contract. It is a federally created cause of action; it must be brought in the name of the United States; and Congress has vested federal courts with exclusive jurisdiction over all suits to enforce the action. In this view of the case, the Court is not construing the subcontract between the general contractor and the supplier. The Court is construing a federal statute and the bond issued in compliance with the statute.

■ In this Court's most recent opinion in this area of the law, Judge Rives wrote:

*The Miller Act bond is not limited to the payment for labor and materials*

risdiction to decide the question. "The Federal questions * * * gave the circuit court jurisdiction, and, having properly obtained it, that court had the right to decide all the questions in the case, even though it decided the Federal questions adversely to the party raising them, or even if it omitted to decide them at all, but decided the case on local or state questions only." Siler v. Louisville & Nashville Rairoad Co., 1909, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753. See Osborn v. Bank of United States, 1824, 9 Wheat 738, 6 L.Ed. 204. As Professor Charles Alan Wright has observed: "When the Supreme Court is reviewing a state court decision it can and does confine its review to the federal question in the case, but a court of original jurisdiction could not function, as Marshall recognized, unless it had power to decide all the questions which the case presents. This functional justification of the Osborn rule finds support also in the constitutional language, *which grants jurisdiction over 'cases' rather than over 'questions'.*" Wright, Federal Courts, § 19, p. 55 (1963).

* * * but is "for the protection of all persons supplying labor and material etc." 40 U.S.C.A. § 270a(a)(2). It must be construed liberally in order to effectuate the purpose of Congress. Illinois Surety Co. v. John Davis Co., 1917, 244 U.S. 376, 378, 37 S.Ct. 614, 61 L.Ed. 1206. Article 2226, Vernon's Civil Statutes of Texas provides for the allowance of attorneys' fees on claims for labor done and material furnished, inter alia. *The Miller Act bond covers this statutory right of a person .supplying labor and materials to the allowance of attorneys' fees.* Boyd Callan, Inc. v. United States, 1964, 5 Cir., 328 F.2d 505, 512 (emphasis added).

We recognize that the Court in that case looked to Texas law as governing resolution of the attorneys' fees issue,[2] just as we do in this case. We emphasize, however, that state law "governs" only through incorporation into federal law, not through its own force.

The First Circuit, in ruling that the obligation of a surety on a bond furnished under the Act must be determined by federal law, observed:

> The Miller Act implements a congressional policy that a bond with surety shall provide protection for persons supplying labor and materials for the construction or improvement of federal property. A suit under the Miller Act does not depend on diversity of citizenship *but is a special, federal right of action limited to a federal court*.[3] American Auto Ins. Co. v. United States for the Use and Benefit of Luce, 1959, 269 F.2d 406, 408 (emphasis added).

Similarly, the Ninth Circuit has said: "On the issue of Continental's liability on the payment bond, the federal law should control because the determination of the extent of the liability involves the construction of a federal statute, the Miller Act, under which it was created." Continental Casualty Co. v. Shaefer, 1949, 9 Cir., 173 F.2d 5, cert. denied 337 U.S. 940, 69 S.Ct. 1517, 93 L.Ed. 1745 (1949). "And even where the rights of the subcontractor against the contractor are determined by state law, the liability of the contractor's surety will be governed by federal law because the determination of the extent of the liability involves the construction of the Miller Act." 1A Moore, Federal Practice ¶ 0.323(16), at p. 1730. See also American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, T.D. No. 3, App.C., (1965).

Directly in point is United States ex rel. Crowder v. Fidelity and Deposit Co., W.D.La. 1956, 144 F.Supp. 322. Subsequent to the termination of a subcontract by mutual consent of the subcontractor and the general contractor, the general contractor involved in that case wrongfully obtained an injunction restraining the subcontractor from the use of the subcontractor's equipment that was on the job at the termination of the subcontract. The question was whether a reasonable attorneys' fee for dissolving that injunction was an item of damages which might be allowed. The court observed that under Louisiana law recovery of attorneys' fees would be allowed. But Judge Hunter held, after referring to the Louisiana law, that

> the question as to whether or not such attorney's fees can be collected under the Miller Act in this suit must be determined by the federal law. No authorities have been cited. However,

---

2. See also United States for the Use and Benefit of Olmos Building Materials Co., Co. v. Texas Construction Co., 5 Cir. 1955, 237 F.2d 705; National Surety Corp. v. United States for the Use and Benefit of Olmos Building Materials Co., 5 Cir. 1964, 327 F.2d 254.

3. The Court added: "Bonds given under the Miller Act are not even in the ordi-

nary forms which would be involved in litigation in the state courts; Congress specified their conditions, and they are executed on printed blanks prescribed by the General Services Administration * * *, the meaning of which should not vary from state to state * * *"

this particular portion of the plaintiffs' claim is not based on negligence or on contract, and we think that under the Miller Act they are entitled to recover not only the fair rental value of the equipment, but also the expense to them of recouping it in cases where the recoupment is from the contractor and was made necessary by his action in retaining it.

Cf. United States for Benefit and on Behalf of Sherman v. Carter, 1957, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776.

■■ B. When we look to the relevant "federal law", the Miller Act, we find that law silent on the question of attorneys' fees.[4] The Act itself does not provide that they may or may not be allowed; neither does it specify that the question is to be determined according to state law. The purpose of the Act gives some guidance to resolution of the issue presently before this Court. Interpreting the Act in Illinois Surety Co. v. John Davis Co., 1917, 244 U.S. 376, 380, 37 S.Ct. 614, 616, 61 L.Ed. 1206, Mr. Justice Brandeis said:

> The purpose of the act was to provide security for the payment of all persons who provide labor or material on public work. This was done by giving a *claim under the bond in lieu of the lien upon land and buildings customary where property is owned by private persons.* Decisions of this court have made it clear that the statute and bonds given under it must be construed liberally, in order to effectuate the purpose of Congress as declared in the act.

The liens to which Mr. Justice Brandeis referred in the italicized portion of the above quotation would, of course, be controlled by state law. We see no reason why a contractor whose remedy stems from a federal statute should have the question of attorneys' fees governed by a different law from that governing a contractor whose remedy arises under state law, *when the federal remedy was intended to be in lieu of the state remedy.* Persons who provide labor and material on public works have no lien rights against the United States. The Miller Act itself reflects the Nation's interest in seeing that mechanics and materialmen engaged in work for the national government are protected at least as well as are those engaged in private work whom the state protects. It seems reasonable therefore to look to state policy to determine whether the "protection" afforded by "payment" encompasses full recoupment of all costs and damages, such as attorneys' fees. We hold, therefore, that the supplier's statutory right to "payment" includes the right to attorneys' fees—if the work is performed in a state allowing a supplier on private projects to recover such fees.

Thus, although federal law controls the determination of this case, state law is "incorporated" to fill the hiatus in the statute. There "is a need to integrate the operation of a federal program with the daily routine activities of citizens under the laws of the several states." See Bank of America National Trust & Sav. Ass'n. v. Parnell, 1956, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93; RFC v. Beaver County, 1946, 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172; Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules of Decision, 105 U.Pa. L.Rev. 797, 804 (1957). In the protection of materialmen and mechanics Texas uniformity seems more appropriate than federal uniformity. See Morgan, The Future of a Federal Common Law, 17 Ala. L.Rev. 10, 28 (1964). There is no overriding national interest in allowing suppliers on government contracts in Texas to recover attorneys' fees, when they would not recover such fees if they were suppliers on state public works or private contracts in Texas. There would be a national interest in allowing their recovery of attorneys' fees, if the United

---

4. The Court has been unable to find legislative history directly bearing on the issue of attorney's fees.

States should suffer because of the superior position of suppliers on state public works or private contracts.

We turn now to the relevant Texas law to determine whether attorneys' fees are recoverable under the local version of the Miller Act.

## II.

■ Texas cases hold that in the absence of a statute or a contractual agreement, attorneys' fees are not recoverable. William Cameron & Co. v. American Surety Co. of New York, Tex.Com.App. 1932, 55 S.W.2d 1032. In this case before the court both a statute and a contract bear on the problem. The statute is Vernon's Civil Statutes, article 2226. It provides:

> Any person having a valid claim against a person or corporation for personal services rendered, labor done, [or] material furnished * * * may present the same to such person or corporation or to any duly authorized agent thereof; and if, at the expiration of thirty (30) days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof * * * he may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney.

The only language from the suretyship contract set out in the record is:

> Now Therefore, if the principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, then this obligation to be void; otherwise to remain in full force and virtue.

■ The Texas courts require strong language in a suretyship contract before they will allow the recovery of attorneys' fees. Where the contract provides that the surety will indemnify the claimant for "all cost and damage" arising from a breach of the contract, attorneys fees are not recoverable. William Cameron & Co. v. American Surety Co. of New York, supra. Similarly, where the contract is to indemnify "against all loss which may be incurred", attorneys' fees are not allowed. American Surety Co. of New York v. Phillips, Tex.Civ.App. 1917, 198 S.W. 623. In a case construing a Miller Act bond apparently identical with the bond in question here, one Court of Civil Appeals disallowed attorneys' fees. F. & C. Engineering Co. v. Moore, Tex.Civ.App.1957, 300 S.W.2d 323. Only where the contract provided for the payment of "all costs and expenses" incurred "in the prosecution of any suit * * * on account of any breaches of said contract, or of this bond * *" were attorneys' fees allowed. Mundy v. Knutson Constr. Co., 1956, 156 Tex. 211, 294 S.W.2d 371. We conclude that under Texas law the suretyship contract here does not obligate the surety to pay attorneys' fees.

We turn, therefore, to the statute. Transamerica argues that article 2226 provides attorneys' fees only on claims for services and materials. While the claim against the contractor is for such services and materials, so the argument goes, the action against the surety is on the bond, not for labor or materials. Red Top supplied no labor or materials to Transamerica. Therefore article 2226 does not apply. Red Top counters by citing numerous cases from Texas and from this Court construing article 2226 to allow the recovery of attorneys' fees from the surety. It urges that the Miller Act and article 5160 of the Texas Civil Statutes, taken from the Miller Act, give the supplier a valid claim directly against the surety for labor and materials, and that article 2226 is therefore applicable.

Prior to April of this year considerable confusion in the Texas law existed.[5] A melange of Court of Civil Appeals decisions, some of them conflicting, gave no clear indication of whether attorneys' fees were recoverable against a surety under article 2226, the general attorneys' fees statute. And this circuit was occasionally called upon to attempt to untangle these knotty Texas decisions.[6] Finally April 26, in New Amsterdam Casualty Co. v. Texas Industries Inc., 1967, 414 S.W.2d 914, the Texas Supreme Court cut the Gordian knot. In that case Judge Steakley asserted unconditionally that "[u]nder the limited coverage of its provisions, Article 2226 has no application to the claim of an unpaid materialman against the surety on an Article 5160 payment bond. The claim and ensuing suit are grounded entirely on the surety obligation. The material was furnished not to the surety but to the contractor-principal." The opinion, based on a literal reading of the relevant statutory provisions, now establishes that attorneys' fees are not recoverable by a materialman on a nonfederal works project in Texas. Accordingly, we hold that under federal law the materialman *in the present case* has no greater protection.

The plaintiff is therefore not entitled to attorneys' fees, and the judgment of the district court awarding them must be

Reversed.

---

5. Mundy v. Knutson Constr. Co., 1956, 156 Tex. 211, 294 S.W.2d 371; William Cameron & Co. v. American Surety Co., Tex. Comm'n App. 1932, 55 S.W.2d 1032; Yates v. Industrial Steel Prods. Co., Tex. Civ.App.1965, 399 S.W.2d 892; H. Richards Oil Co. v. W. S. Luckie, Inc., Tex. Civ.App.1965, 391 S.W.2d 135; Standard Accident Ins. Co. of Detroit v. Smith-Perry Elec. Co., Tex.Civ.App.1963, 373 S.W. 2d 97, aff'd per curiam, Tex.Sup.Ct., 376 S.W.2d 335; Ferrier Bros. v. Brown, Tex.Civ.App.1962, 362 S.W.2d 181; American Surety v. Phillips, Tex.Civ.App.

1917, 198 S.W. 623; F. & C. Engineering Co. v. Moore, Tex.Civ.App.1957, 300 S.W. 2d 323.

6. National Surety Corp. v. United States for the Use and Benefit of Olmos Bldg. Materials Co., 5 Cir. 1964, 327 F.2d 254; Boyd Callan v. United States for the Use of Steves Indus., Inc., 1964, 328 F.2d 505. It appears that at least one line of Texas cases was grounded upon our holding, the first on this problem in Texas, in Caldwell Foundry & Mach. Co. v. Texas Constr. Co., 5 Cir. 1955, 237 F.2d 705.