UNITED STATES of America for and on Behalf of MISSISSIPPI ROAD SUPPLY CO., Plaintiff-Appellee,

v.

H. R. MORGAN, INC. and U. S. Fidelity and Guaranty Co., et al., Defendants-Appellants.

No. 74-3761.

United States Court of Appeals, Fifth Circuit.

Nov. 12, 1976.

Rehearing Denied Dec. 29, 1976.

Jere R. Ramsay, Hattiesburg, Miss., for defendants-appellants.

Henderson S. Hall, Jr., Natie P. Caraway, Jackson, Miss., for plaintiff-appellee.

Before MORGAN, CLARK and TJOF-LAT, Circuit Judges.

CLARK, Circuit Judge:

This use action was brought by Mississippi Road Supply Company (Mississippi Road Supply) against Bobby Gray Young d/b/a Young Construction Company (Young), H. R. Morgan, Inc. (Morgan), and United States Fidelity and Guaranty Company (USF&G). Mississippi Road Supply seeks to recover equipment rental and repair expenses on construction machinery rented to Young and alleged to have been used by him on a construction project as a subcontractor, together with attorneys' fees. Morgan, the prime contractor, furnished the project owner, Chata Development Corporation (Chata), a general contractor's payment and performance bond on which USF&G was surety. Morgan's contract with Chata was to build an industrial development park on land which Chata, a private, nonprofit corporation, held by virtue of a 25-year lease with an option to extend the lease for an additional 25-year term.

JURISDICTION

Title to this land is held by the United States. The lessor in the contract on which Chata depends was the "Mississippi Band of Choctaw Indians," and the execution of the lease was approved by a representative of the Secretary of the Interior as provided by 25 C.F.R. § 131, 1976, *et seq.*[1] Section 131.5(c) of these regulations provides:

> Unless otherwise provided by the Secretary a satisfactory surety bond will be required in an amount that will reasonably assure performance of the contractual obligations under the lease. Such bond may be for the purpose of guaranteeing:
>
> (1) Not less than one year's rental unless the lease contract provides that the annual rental shall be paid in advance.
>
> (2) The estimated construction cost of any improvement to be placed on the land by the lessee.
>
> (3) An amount estimated to be adequate to insure compliance with any additional contractual obligations.

In compliance with this regulation, the approved lease contract required that Chata, as lessee, provide security which would guarantee completion of the improvements contemplated by the lease and payment in full of all claims of all persons for work performed on or materials furnished in that construction. The pertinent portions of the lease are set out in the margin.[2] To meet its lease obligation, Chata required the prime contractor, Morgan, to post the above-described bond.

---

1. We note, but do not base our decision here in any part on, *United States v. State Tax Commission of the State of Mississippi*, 505 F.2d 633 (5th Cir. 1974), *petition for rehearing denied*, 535 F.2d 300 (1976), petition for rehearing en banc denied, 541 F.2d 469, in which we held the "Mississippi Band of Choctaw Indians" was not an Indian tribe and its members were citizens of the State of Mississippi.

2. The lease document was entitled:

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS

MISSISSIPPI BAND OF CHOCTAW INDIANS
PHILADELPHIA, MISSISSIPPI

BUSINESS LEASE CONTRACT

It stated in preface that it was made under and in accordance with the provisions of "existing law and the regulations prescribed by the Secretary of the Interior in the Code of Federal Regulations, Title 25, Indians, Part 131, and any amendments thereto relative to leases on restricted Indian lands which by reference are made a part hereof."

Paragraph 12(c) provided:

Before commencement of construction of each improvement on the leased premises,

Mississippi Road Supply rented various machines to Young which it claimed Young used as Morgan's subcontractor for working on the industrial park covered by the lease contract discussed above. Jurisdiction for the action to recover for this indebtedness from both the prime contractor and the surety was initially asserted on the basis of the Miller Act, 40 U.S.C. §§ 270a and 270b. The trial below was conducted on this jurisdictional premise, and all jury instructions were drawn from Miller Act law. However, for reasons later apparent, we pretermit deciding whether jurisdiction exists under the Miller Act.

This, of course, is not a garden variety Miller Act case in which the United States both owns the land and contracts for its improvement. *See, e. g., United States ex rel. Jinks Lumber Co. v. Federal Insurance Co.,* 452 F.2d 485 (5th Cir. 1971); *United States ex rel. Friedrich Refrigerators, Inc. v. Forrester,* 441 F.2d 779 (5th Cir. 1971); *United States ex rel. T/N Plumbing and Heating Co. v. Fryd Construction Corp.,* 423 F.2d 980 (5th Cir. 1970). Rather, it is contended to be a case governed by the Miller Act because of the extent of involvement of the United States.

■ One major purpose of the Miller Act is to protect subcontractors and materialmen working on federal projects since normal state lien rights are not available. *United States Fidelity & Guaranty Co. v. United States,* 475 F.2d 1377 (Ct.Cl.1973) (en banc). It is axiomatic that state law liens may not be asserted against federally owned lands or buildings. *United States v. Munsey Trust Co.,* 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947). In addition, Miller Act bonds are provided in order to protect the United States from suits rested upon its equitable duty to ensure that subcontractors and suppliers of materials receive payment. *Kennedy Electric Co. v. United States Postal Service,* 508 F.2d 954 (10th Cir. 1974). Recognizing these purposes of the Miller Act, courts have at times extended the Act past its literal wording to accord federal court jurisdiction in situations where some normal Miller Act indicia (government land ownership and contracting) are absent. The foremost example in this circuit is the Capehart Housing situation where the lands on which construction took place were in private hands until construction was completed, then passed immediately to the government. This arrangement was made in order to facilitate the congressional financing scheme for military housing. *Autrey v. Williams & Dunlap,* 343 F.2d 730 (5th Cir. 1965); *Lasley v. United States,* 285 F.2d 98 (5th Cir. 1960).

■ Mississippi Road Supply argues that the Capehart Housing cases indicate Miller Act jurisdiction is available anytime a project is a federal one. It asserts that because the funds here come from the government in the form of grants to Chata from the Economic Development Administration and are paid out through Chata to Morgan, government funding is present. This analysis, however, misses the mark. As succinctly pointed out in *United States v. Mattingly Bridge Co.,* 344 F.Supp. 459

---

Lessee agrees to provide security which will guarantee completion of the improvement, and payment in full of claims of all persons for work performed in or materials furnished for construction. Lessee may provide said security by posting a corporate surety bond in an amount equal to the cost of improvement, said bond to be deposited with the Secretary and to remain in effect until the improvement is satisfactorily completed. Said bond shall be conditioned upon the faithful performance of Lessee, and give all claimants the right of action to recover upon said bond in any suit brought to foreclose mechanic's or materialmen's liens against the property. Upon approval of this lease by the Secretary, the Lessee agrees to post a corporate surety bond in a penal sum of not less than one year's minimum rent.

In Paragraph 19 the lessee contracted and agreed that all bills for labor and materials incurred in the construction or maintenance would be promptly paid as the same became due and payable and that no mechanics', laborers', or materialmen's liens would be permitted to accrue.

(W.D.Ky.1972), government funding is not the whole answer. It must be true that either (1) the subcontractors and suppliers of material could assert an action for equitable recovery against the United States or one of its agencies, or (2) normal state labor and material lien remedies are unavailable because of federal ownership of the lands.

It is unclear whether these two indicia are present here. The parties have stipulated that record title to this land is in the United States. However, Chata holds a 25-year lease from a group acting with government agency approval. Although no liens can be asserted against the government's residual ownership, there appears to be no reason why a lien could not be asserted under state law against the leasehold interest of Chata, a private Mississippi corporation. Allowing such a leasehold lien to be affixed would be a breach of Chata's lease contract. The legal possibility that Chata could breach this obligation is clearly the reason why it was required to bond all improvement and maintenance work.

Mississippi Road Supply's argument that its position as a materialman of a subcontractor prevents the assertion of any state lien rights under Mississippi law also misses the mark. The question is not whether the state grants lien rights to everyone who has anything to do with the project, but whether the federal government's involvement makes the assertion of a state-granted lien remedy ineffective or impossible.

As in *Mattingly*, the existence of government funding alone is not enough to allow a suit against the Economic Development Administration to recover payment from funds which may be allocated for this project. *See Kennedy Electric Co. v. United States Postal Service*, 508 F.2d 954 (10th Cir. 1974). However, the lease contract and 25 C.F.R. § 131.5(g)(1) muddle both of the above conclusions. Each requires that all of the lessee's obligations and the obligations of its sureties go to the United States as well as to the lessor of the land. Depending on its construction, such a clause could indicate either that this case deserves treatment similar to the Capehart Housing cases where the existence of jurisdiction has been recognized, or is controlled by *Mattingly* where jurisdiction was rejected.

We decline to resolve the issue in order to avoid creating a precedent that would stretch the Miller Act's jurisdictional grant to dimly-lit limits because under the facts in this record another statute contains a clear grant of jurisdiction.[3]

■ 28 U.S.C. § 1352 gives district courts original jurisdiction of an action on a bond "executed under any law of the United States." This section is applicable where a regulation requiring a bond has the force of law. *United States ex rel. Empire Plastics Corp. v. Western Cas. & Sur. Co.*, 429 F.2d 905 (10th Cir. 1970); *United States ex rel. Victory Electric Corp. v. Maryland Cas. Co.*, 215 F.Supp. 700 (E.D.N.Y.1963). A regulation promulgated by the head of a department under a statute authorizing him to issue regulations is presumptively valid unless arbitrary, unreasonable, or plainly inconsistent with law. *Giancona v. Johnson*, 335 F.2d 372 (7th Cir. 1964). Because 25 C.F.R. § 131.5(c) was issued by the Acting Secretary of the Interior, 26 Fed. Reg. 10966 (Nov. 23, 1961), under the authorization of 25 U.S.C. § 415 (1963), *as amended* (Supp.1976), it is a valid legislative rule and possesses the force of law. *See* 1 K. Davis, Administrative Law Treatise (1958) § 5.03. Since 25 U.S.C. § 415 provides that these lands owned by the United States could only have been leased to Chata subject to the provisions of 25 C.F.R. § 131 *et seq.*, Morgan's bond was required by a "law of the United States." Therefore, the district court possessed jurisdiction to entertain this action under § 1352.

## COVERAGE OF THE BOND

■■ The district court trial was conducted on the premise that the bond was

---

**3.** Where pertinent in the remainder of this opinion, we have considered the possibility that the existence of Miller Act jurisdiction would provide plaintiffs with some claim or defendants with some defense not available under the jurisdictional theory we adopt.

one covered by the Miller Act. Under this assumption, it correctly ruled that the payment bond covered equipment rental and repairs due by a first tier subcontractor such as Young.[4] Since we do not reach the correctness of this premise, it is necessary to construe the coverage of this particular bond without assuming it was written up by operation of law to the statutory minimum coverage requirements the Miller Act would provide. There is no federal legislative standard for bonds "executed under any law of the United States," so we look to state law bond provisions and construction for guidance. Under Mississippi jurisprudence, private contract bonds are not required to extend payment coverage to any person not in privity with the prime contractor.[5] Our task here then is to decide where the instant undertaking falls between the extremes of certain coverage under the Miller Act and no coverage under Mississippi's private bond law.

The federal law under which the bond was required[6] suggests no purpose other than the normal good business practice of assuring project completion free of liens for unpaid labor and materials. Thus, the underlying statute furnishes no unique standard for coverage. On the other hand, the language of the lease contract required a bond be furnished for "payment in full of all persons for work performed in or materials furnished for construction."[7] Furthermore, the bond instrument itself secured "payment to all persons, firms, subcontractors, and corporations furnishing materials for or performing labor in the prosecution of the work . . . including all amounts due for . . . repairs on machinery, equipment tools, consumed in connection with the construction of such work . . . ."[8]

The bond specifically guarantees payment for repairs made to project equipment. Although equipment rentals are not listed as a payable item in so many words, they are so closely analogous to repairs and equipment tools which are consumed in the work that there can be no serious question as to their inclusion under the normal rules of bond construction giving coverage for things of like kind to those enumerated and construing the agreement most strongly against the compensated surety. The amount of such rents are job expenses of the subcontractor and represent the approximate value of the equipment's useful life which is dedicated to construction of the project. The only significant limitation on the unusually inclusive guarantee of payment is that materials and equipment be consumed or used in connection with the construction of the work. Since this is also a requisite of Miller Act coverage, the district court has considered and resolved this

**4.** *Rental and repair*: *Illinois Surety Co. v. John David Co.*, 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206 (1917) (equipment leased by a contractor and used on the project is "labor or materials" within the meaning of former § 270) [which remains substantially unchanged in this regard]; *Massachusetts Bonding & Ins. Co. v. United States ex rel. Clarksdale Machinery Co.*, 88 F.2d 388 (5th Cir. 1937) (equipment rentals and repairs to equipment are bond covered).

*Recovery by materialmen of subcontractors*: *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944); *National Union Indemnity Co. v. R. O. Davis, Inc.*, 393 F.2d 897 (5th Cir. 1968) (suppliers not in privity with contractor but in privity with first tier subcontractor may recover on contractor's bond).

**5.** Miss.Code Ann. § 85–7–185 (1972); *Alabama Marble Co. v. United States Fidelity and Guaranty Co.*, 146 Miss. 414, 111 So. 573 (1927).

**6.** 25 U.S.C. § 415, and its implementing regulation, 25 C.F.R. § 131.5.

**7.** See note 2, *supra*.

**8.** The full bond undertaking was:

NOW, THEREFORE, if the principal shall promptly make payment to all persons, firms, subcontractors, and corporations furnishing materials for or performing labor in the prosecution of the work provided for in such contract, and any authorized extension or modification thereof, including all amounts due for materials, lubricants, oil, gasoline, coal and coke, repairs on machinery, equipment tools, consumed or used in connection with the construction of such work, and all insurance premiums on said work, and for all labor, performed in such work whether by subcontractor or otherwise, then this obligation shall be void; otherwise to remain in full force and effect.

disputed fact issue in favor of coverage.[9] That resolution was not clearly erroneous and decides the issue in the legal context we adopt as well.

We conclude that bond given by Morgan and USF&G to Chata provides protection for unpaid equipment rental and repairs to Mississippi Road Supply.

## STATUTE OF LIMITATIONS

Morgan and USF&G argue that the Miller Act one-year statute of limitations bars this action. Although we have specifically pretermitted finding Miller Act jurisdiction, there is no need to remand for a determination of limitation rights under the § 1352 jurisdictional grant that authorized maintenance of this action in the district court. Assuming as we have, that the Miller Act is inapplicable here, there is no particular statute of limitations applicable to the bond required by 25 C.F.R. § 131.5(c). In such circumstances, we look to the state statute of limitations applicable to actions of a similar nature. *See Aboussie v. Aboussie*, 441 F.2d 150 (5th Cir. 1970); *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5 (5th Cir. 1967); *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195 (5th Cir. 1960). The Mississippi statute applicable to actions on contract bonds requires that the suit be filed within one year of either completion or abandonment of the project. Miss.Code Ann. § 85–7–189 (1972). Under the specific instructions of the district court, the jury found on conflicting evidence that this suit was filed within one year of the last date Mississippi Road Supply's rental machinery was used on the project. That finding is supported by the record. A fortiori, the Mississippi Statute requiring suit within one year of project completion was also met. Therefore, under either view of the case, no statute of limitations barred this action.

The same logic answers Morgan's argument that the 90-day notice requirement of the Miller Act was not met. If this be a Miller Act case, the jury's determination (again made under adequate instructions from the trial court and on the basis of evidence in the record) that the required notice was given settled the issue.

## SUFFICIENCY OF THE EVIDENCE

In several assignments of error, Morgan and USF&G assailed both the sufficiency of the evidence to support the verdict and the admissibility of certain portions of the evidence. These alleged errors are without merit. As noted above, the jury received evidence that would enable it to find for Mississippi Road Supply if it chose to resolve documentary and testimonial conflicts in favor of that company. Given the court's instructions, the jury's verdict manifested just such a credibility choice, which we will not overturn. Further, the admission of documents disclosing equipment rentals to Young for a period beginning before his first appearance at the job site but extending until after that date was not error. The invoices and leases were introduced to prove that Young had rented the equipment and the cost of those rentals as well as the dates of use. The partial overlap indicates no incompatibility with rental by Young for use at the Chata site. In the absence of clear inconsistency between the lease dates and the commencement of work, the objections went to weight, not admissibility. Likewise, the objection to the introduction of certain of the invoices and leases by one of the witnesses is without merit because of the authentication of the invoices and their relation to the Chata job by other competent witnesses. At worst, then, the evidence was cumulative. The documents were properly admitted under limiting instructions granted by the trial court; and the selection among competing inferences was properly made by the jury.

## JURY INSTRUCTION

Morgan and USF&G object to the following portion of the instructions:

. . . so long as each piece of equipment remained on the contract, whether

---

**9.** See, *infra*, SUFFICIENCY OF THE EVIDENCE and JURY INSTRUCTION.

it was working or not, until the contract was completed or abandoned or the sub-contractor was replaced. And that would be the determination date where the liability on the lease would expire . . .

(TR. 397). They rely on *United States ex rel. H. R. Martin v. F. D. Rich Co.*, 199 F.Supp. 939 (N.D.Fla.1961), *aff'd*, 308 F.2d 807 (5th Cir. 1962), to argue that merely having equipment on the job site is insufficient for purposes of Miller Act recovery. This proposition may be true, but it did not render the instruction erroneous. There was uncontradicted evidence that this machinery had been used on the site. Read in context, the instruction went to whether the machinery had to be in continual use to be covered under the bond. The key element is whether the machinery was dedicated to use on this project. There was substantial evidence to justify a finding of such dedication. The court's instruction that it did not have to be in continual use was not erroneous. *See Mike Bradford & Co. v. F. A. Chastain Construction, Inc.*, 387 F.2d 942, 944 (5th Cir. 1968); *Friebel & Hartman, Inc. v. United States ex rel. Codell Construction Co.*, 238 F.2d 394 (6th Cir. 1956).

## RULE 60(a) REMITTITUR

■ The district court instructed the jury on the mathematical computations necessary to determine appropriate damages should they rule in favor of Mississippi Road Supply Company. Although the jury ruled in favor of the company and clearly intended to award them all of the requested damages, an error in computation resulted in an award which was too large. Upon a Fed.R.Civ.P. 60(a) motion filed by Mississippi Road Supply, the district court reduced the jury's award to the appropriate amount. There was no error in this procedure. *See Continental Casualty Co. v. Little*, 152 F.2d

728 (5th Cir. 1946); *cf. Jamison v. Westvaco Corp.*, 526 F.2d 922, 927–32 (5th Cir. 1976); *Bowles v. Branick*, 666 F.Supp. 557 (W.D. Mo.1946).

## ATTORNEYS' FEES

■ On remand, 528 F.2d 926 (5th Cir. 1976), we requested the district court to clarify its attorneys' fees ruling. The language of its supplemental order suggests that the court entertained the misconception that the jury did not award attorneys' fees. The record discloses that the jury was instructed to award 15% attorneys' fees on the unpaid rentals. That they did so is borne out by the amount of the verdict. Mississippi Road Supply's theory for recovering these fees was that since its contract with Young provided 15% attorneys' fees, this award was a bond-recoverable item.[10] However, under Mississippi law, unless a provision for the payment of attorneys' fees to claimants for labor or materials furnished to the project also appears in the bond, attorneys' fees may not properly be awarded in an action on the bond.[11] Within the parameters of the federal purpose for which the bond was required, state law provides the basis for interpreting the meaning of the bond with reference to attorneys' fees. *See Transamerica Insurance Co. v. Red Top Metal, Inc.*, 384 F.2d 752 (5th Cir. 1967).

The bond in question contains no specific reference to attorneys' fees. It is not benefitted by any general statutory language under which the payment of such fees might be authorized by fair judicial construction. Even under the more liberal rules of construction applicable in Miller Act cases, precedent indicates that the terms of this bond would not support an award of attorneys' fees. *See Transamerica Insurance Co. v. Red Top Metal, Inc.*, *supra*, 384 F.2d at 757–58. Under either theory, the award of attorneys' fees was

---

10. The pertinent rental agreement clause provides:

> Should any legal proceeding be instituted by LESSOR to recover any monies due and to become due hereunder and/or for possession of the equipment, LESSEE shall pay a rea-

sonable sum (15%) of the amount sued for (if not prohibited by law) as Attorney's fees, to be not less than $50.00.

11. *Faulkner Concrete Pipe Co. v. United States Fidelity & Guar. Co.*, Miss., 218 So.2d 1 (1968).

improper and the judgment entered on the corrected verdict must be reduced by the amount of this award.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.