**UNITED STATES of America, for the Use and Benefit of CARTER EQUIPMENT COMPANY, INC., Plaintiff-Appellee,**

v.

**H. R. MORGAN, INC., and National Indemnity Company, Defendants-Appellants.**

No. 75–2362.

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1977.

Thomas W. Tyner, Hattiesburg, Miss., for H. R. Morgan & Nat'l Ind.

Francis T. Zachary, Hattiesburg, Miss., for H. R. Morgan.

Wm. H. Cox, Jr., Jackson, Miss., D. Gary Sutherland, Hattiesburg, Miss., for plaintiff-appellee.

J. Martin Mooney, Collins, Miss., for Homer Folks, Etc.

Before COLEMAN, GODBOLD and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This action was instituted by Carter Equipment Company (Carter) under the Miller Act, 40 U.S.C.A. § 270a *et seq.*, to recover for equipment rentals, parts, repairs, and maintenance provided to a subcontractor, Homer Folks, d/b/a F & L Contractors (Folks), on a government project (the Holiday Creek job). Carter seeks payment from Folks as well as the general contractor, H. R. Morgan, Inc. (Morgan), and Morgan's surety, National Indemnity Company (National). The district court awarded Carter damages in the amount of $58,409.08, plus legal interest and costs, as well as attorney's fees in the stipulated sum of $10,800.00. Morgan and National (appellants) prosecute this appeal.

On June 17, 1971, Morgan entered into a contract with the United States for the construction of a floodwater retarding structure known as the Holiday Creek project. Morgan and Folks entered into a subcontracting agreement with respect to necessary grading. Folks then contacted Carter in order to procure the necessary earth-moving equipment. Folks agreed to rent seven (7) pieces of equipment for use on the project and the rental price and terms were agreed upon between Carter and Folks after a discussion among Carter, Folks and Morgan. Thus, Morgan knew that Folks had agreed to rent the equipment from Carter. In the rental agreements, Folks undertook to repair and maintain the equipment at its expense and to return the equipment to Carter at the end of the rental term at its own expense.

As the work on the project progressed, the equipment was repaired and maintained pursuant to the terms of the rental agreements and the charges therefor were assessed against Folks. On July 7 and 20, 1971, Carter, Morgan and Folks met and Folks by written assignment authorized Morgan to deduct from its earnings and pay directly to Carter.

In December, 1971, when the winter shutdown of the job occurred, the project was eighty per cent complete and running ahead of schedule. At this time there was another meeting among Carter, Morgan and Folks at which Carter advised Morgan and Folks of the total amount of its claim for rental, maintenance and parts. Morgan at this point promised to pay approximately $20,000.00 directly to Carter on behalf of Folks. Morgan, subsequently, paid Carter $2,000.00.

At this same meeting it was agreed that because of the winter shutdown monthly rentals on the equipment would be suspended until the resumption of work in March or April. However, it was also agreed that necessary maintenance and repairs would continue to be made on the equipment pursuant to the terms of the rental agreements. Most of the equipment remained at the Holiday Creek project during this time period. Folks did not complete the project and defaulted on its payments to Carter. Carter has thus brought this suit against Morgan, Folks and National for payment of the sums allegedly due.

The first issue presented is whether the district court erred in allowing certain statements of Folks to be introduced in support of Carter's claims. John Newsom, a sales representative for Carter, was allowed to testify concerning a certain meeting that he had with Folks in March or April, 1972. Newsom had some inkling at this time that Folks was not going to complete the project. At this meeting Newsom asked Folks to go through a ream of invoices and "identify them as to whether or not they went on the Holiday Creek job and on equipment that he had using over there and initial the ones that he was sure of or sign the ones he was sure of, because this is some items that is hard to identify just by walking up and saying that they went there unless the man that was on the job actually knows that they got them there." Folks initialed sixty two (62) invoices to indicate that the amounts reflected therein were chargeable to repairs and maintenance on the equipment at the Holiday Creek project. Upon trial of this case before the court these initialed invoices, along with the testimony of Newsom concerning the meeting with Folks, were introduced, over objection, in support of Carter's claim. The district court awarded Carter the total sum of the parts, service and maintenance invoices.

Carter submits that the initialed invoices along with the testimony of Newsom were admissions of a party-opponent imputable to Folks' joint-obligors, Morgan and National. That is, Folks' admission that a given invoice was for parts, service or maintenance on equipment at the Holiday Creek project operated to Folks' detriment to the same extent as to Morgan and National in that they were jointly liable with Folks, albeit indirectly. Thus, Carter asserts that all relevant and admissible evidence as to the liability of Folks carries equal weight and relevance as to the liability of Morgan and National.

Of course, statements[1] made out of court by a party-opponent are universally deemed admissible when offered against him. 4 J. Wigmore, Evidence § 1048 (Chadbourn rev. 1972). The acquiescence of Folks and his signature on the invoices were thus properly allowed into evidence to prove that he owed the debt represented thereby. However, the mere fact that Folks admitted that he owed the charges on a given invoice was not particularly damaging to Morgan and National. Folks owed Carter a substantial amount of money for parts, repairs and maintenance on other jobs. Thus, the fact that Folks admitted that he owed the amount shown on an invoice was not particularly devastating to Morgan and National.

The important fact to which Newsom was allowed to testify was with regard to *the project* on which the particular charge on an invoice related. That is, by his statements Folks represented that the charges shown were for parts, repairs, or maintenance *on the Holiday Creek project.* It is at this point that the interests of Folks and the appellants diverge. The fact that Folks owed a given debt on a particular invoice exhausted his interest in the matter. Folks owed the money whether the particular invoice represented parts, service or maintenance on the Holiday Creek project or on another job that he had in the area. Thus, for Folks to admit that a given invoice

---

1. In this regard the signing of the invoices by Folks clearly constitutes nonverbal conduct intended as an assertion. *See* F.R.Evid. 801(a).

represented a charge to the Holiday Creek project as opposed to some other job was of no particular consequence to him. However, as to Morgan and National these statements by Folks were an absolutely necessary link in the chain of proof for Carter.

■ The general rule is that a declaration by an obligor is receivable as an admission against joint obligors if the admission was made within the scope of the common purpose and relates to the joint interest in the matter out of which the liability is claimed to arise. *Interstate Company v. Garnett,* 154 Miss. 325, 122 So. 373 (1929); *see generally* 4 J. Wigmore, Evidence § 1077 (Chadbourn rev. 1972). In this case a mere statement of the rule suffices to demonstrate its inapplicability. In short, the declarations of Folks with regard to the location of the project to which a given invoice related were clearly outside the joint interest of Folks and appellants. To the extent then that Newsom was allowed to testify as to the location to which a given invoice was chargeable, the evidence was inadmissible with regard to the liability of Morgan and National.

■ Carter asserts that, notwithstanding the admissions of Folks, the liability of Morgan and National was independently proven. Dan Hyde, president of Carter Equipment, testified that with regard to the Holiday Creek project a "separate series accounting" was established for Folks on the rental of the seven items of equipment, including the repairs, parts and maintenance and that these invoices were kept in the ordinary course of business at Carter. Thus, as parts or repairs or maintenance was supplied to Folks at the Holiday Creek job, an invoice would be prepared contemporaneously utilizing the separate series accounting. Carter argues that this evidence was sufficient to establish the liability of Morgan and National.

We are of the opinion that consideration of this argument on appeal would not be appropriate. Hyde admitted that four of the items of equipment used on the Holiday Creek project were in Folks' possession prior to July, 1971, when the Holiday Creek job was started. This equipment was merely transported to the new job site in an "as is" condition. A reasonable inference from this evidence would be that repairs and maintenance performed on this equipment as the project got underway would be necessary as a result of wear and tear from prior use. Thus, while an invoice on its face might appear to relate to the Holiday Creek project, in reality the charge arguably would not be covered by the Miller Act bond. In addition, some of the invoices on their face—absent the "admission" of Folks—indicate that, in fact, they may relate to work performed on another job site.

■ In sum, we are unable to say that as a matter of law the evidence was sufficient to sustain the verdict against Morgan and National. The district court found it unnecessary to resolve this conflict in the evidence because of the erroneous admission of the testimony of Newsom against Morgan and National. Since the district court's findings are so tainted by this inadmissible evidence, we must remand the case for new findings.

Entangled in the dispute as to the invoices which are properly chargeable to the Holiday Creek project is the controversy with regard to the timely filing of notice. Section 2(a) of the Miller Act, 40 U.S.C.A. § 270b(a), provides that any person with no direct contractual relationship with the prime contractor may nevertheless sue under the payment bond if he gives "written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made." Obviously, a finding that a certain notice was timely entails concluding that on a date within the ninety day period material was supplied to this particular project. Since we must remand for new findings on the issue of which invoices are properly chargeable to Holiday Creek, the question as to whether

timely notice was given must also await these new findings.[2]

Finally, appellants insist that the district court erred in awarding attorney's fees to Carter. Carter asserts that since the equipment rentals provided for the recovery of attorney's fees,[3] this award was recoverable under the general terms of the payment bond[4] interpreted with a view toward the liberal purpose of the Miller Act. This specific issue was decided in *United States for and on Behalf of Mississippi Road Supply Co. v. Morgan*, 542 F.2d 262 (5th Cir. 1976):

> The bond in question contains no specific reference to attorneys' fees. It is not benefitted by any general statutory language under which the payment of such fees might be authorized by fair judicial construction. Even under the more liberal rules of construction applicable in Miller Act cases, precedent indicates that the terms of this bond would not support an award of attorneys' fees. *Id.* at 269.

REVERSED and REMANDED.

---

2. The district court was of the opinion that the necessary notice was given by Carter in the December, 1971, meeting in reliance on *Houston Fire and Casualty Insurance Co. v. United States for the Use and Benefit of Trane Company*, 217 F.2d 727 (5th Cir. 1954). We pretermit consideration of this conclusion at this time.

3. ATTORNEY'S FEES. Should it become necessary that Lessor employ an attorney to enforce any of the provosions (sic) of this Agreement, to take possession of the equipment covered hereby or any part thereof, or to recover any sum of money due hereunder, Lessor shall be entitled to recover such reasonable attorney's fees and expenses as shall be incurred in connection therewith.

4. The language relied upon provides:
   "NOW THEREFORE, if the Principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract, . . . . "