UNITED STATES of America for the Use and Benefit of Donald E. CAPPS, d/b/a Capps' Customs, Plaintiff,

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Roy Anderson Corporation, United Stage Equipment, Inc. and Buzz Howell d/b/a United Stage Equipment, Defendants.

No. CV–94–A–648–N.

United States District Court, M.D. Alabama, N. Division.

Feb. 7, 1995.

Robert B. Huie, Birmingham, AL, for United States of America for the Use and Benefit of Donald E. Capps dba Capps' Customs.

L. Graves Stiff, III, Starnes & Atchison, Birmingham, AL, for The Fidelity & Deposit Co. of Maryland.

Ralph B. Germany, Jr., Samuel C. Kelly, Brian A. Cowan, Ott, Purdy & Scott, Jackson, MS, for Roy Anderson Corp.

Larry W. Madison, Groover, Thompson, Madison & Gray, P.C., Hartselle, AL, for United Stage Equipment, Inc., Buzz Howell.

## MEMORANDUM OPINION & ORDER

ALBRITTON, District Judge.

## I. INTRODUCTION

This cause is now before the court on the following Motions for Summary Judgment: Defendant Fidelity and Deposit Company of Maryland's Motion for Partial Summary Judgment filed on August 26, 1994; Defendant Roy Anderson Corporation's Motion for Summary Judgment filed on September 30, 1994; and Plaintiff's Motion for Partial Summary Judgment filed October 24, 1994.

Donald E. Capps ("Capps") does business as an individual proprietorship in the state of Alabama; this enterprise is known as Capps' Customs. On May 26, 1994, Capps filed a two count complaint seeking to recover under a Miller Act bond. Capps named the following defendants: Fidelity and Deposit Company of Maryland ("Fidelity"), Roy Anderson Corporation ("Anderson"), United Stage Equipment, Inc. ("United"), and Buzz Howell ("Howell"). Capps seeks the balance which he claims United owes him for work he did on a government construction project. Specifically, Capps alleges in Count One that Defendants owe him $7,285.18 for work he performed as a subcontractor of United on the construction project at Gunter Air Force Base. Capps also claims that he is due interest on that sum and attorney's fees. In Count Two, Capps alleges that Fidelity failed to make payment of his claim and refused to investigate the claim to determine if payment should be made. Capps asks for $100,000 for Fidelity's alleged bad faith refusal to investigate or pay.

On July 29, 1994, Anderson, the general contractor on the construction project, filed a counterclaim against Capps and crossclaims against its surety, Fidelity, and its subcontractor, United and Howell. Anderson alleges that these claims are appropriate as this is properly an interpleader suit. Anderson alleges that the complex nature of the dispute between Capps and United cause it to doubt which of these two parties is due the subcontract balance. Anderson brings these claims in an attempt to avoid multiple liability on these funds. It also seeks to limit its liability to $7,285.18. Anderson seeks to tender this amount to the court and be relieved of any further liability. Anderson asserts that it would then be due to be dismissed with prejudice from the case.

United filed a counterclaim against Capps alleging that Capps installed a track system which was insufficient to support the weight of the curtain system and that United had to replace the track system at its own expense. The replacement cost United $2,500.00. United contends that the installation of the faulty track system constituted a breach of the contract between United and Capps. United seeks a judgment of $2,500.00 against Capps.

As previously noted, this cause is now before the court on several motions for summary judgment. Fidelity seeks summary judgment on Count Two only the bad faith claim. Fidelity contends that its submissions establish that there is no genuine issue of fact and that it is entitled to judgment as a matter of law on this count. Anderson's Motion for Summary Judgment is based on its contention that only the $7,285.18 is at issue and that its payment of this sum to the court, as is appropriate in interpleader cases, warrants its dismissal from the case. The basis of Anderson's contention is that attorney's fees are not due as a matter of law. Capps contends that he is due summary judgment on both Count One and Count Two and that the only issue remaining which need go to a jury is the amount of punitive damages for Count Two.

For the reasons stated below, the court finds that: 1) Fidelity's Motion for Partial Summary Judgment is due to be GRANTED; 2) Anderson's Motion for Summary Judgment is due to be DENIED; and 3)

Capps' Motion for Partial Summary Judgment is due to be GRANTED in part and DENIED in part.

## II. FACTS

The court has carefully considered the answers, affidavits, and documents submitted in support of and in opposition to the pending motions. The submissions establish the following facts:

Anderson was the general contractor for construction of the Gunter Air Force Base SNCO Academy and Dormitory Project ("the Project") in Montgomery, Alabama. Anderson entered into a contract with Fidelity whereby Anderson was the principal and Fidelity was the surety. Fidelity issued payment and performance bonds for this construction project. Anderson and Fidelity executed the contract for the issuance of the bond pursuant to the requirements of 40 U.S.C. § 270a.

Anderson entered into a contract with United whereby United would furnish and install curtains and blinds on the Project. It is undisputed that Capps submitted a proposal to United in August of 1993. This proposal listed the price for drapery systems for the Project. The proposal bears the signature of Donald Capps on behalf of Capps' Customs. Buzz Howell's signature appears on the line below the paragraph which describes the terms of United's acceptance of the proposal.[1] The proposal puts the total price for the specified work at $35,028.35 and requires a deposit of $10,508.51. The proposal specifies that the balance is due upon completion.

Capps furnished and installed a curtain track in the auditorium that was not substantial enough to support the weight of the

curtain. The curtain and the track fell due to the weight of the curtain. Capps avers the track which he installed was the one specified. Anderson admits that the track installed by Capps pursuant to its contract with United and Howell conformed with plans and specifications. By failing to respond to Capps' requests for admissions, Howell and United also admit that the track conformed with plans and specifications and that the curtain track conformed with the requirements of the United/Capps contract.[2] Capps contends that prior to installing the track, he informed United that the capacity of the track was not sufficient to support the curtain and that the project required a heavier rod. United refused to approve any addendum or make any change in the track. United failed to respond to Capps' requests for admissions, and therefore, this court deems it to have admitted Capps' contentions regarding the discussion of the appropriateness of the track. After the aforementioned discussions, Capps installed the track according to specifications.

After the curtain fell, Anderson took the position that no one had advised it that the track would not support the curtain. Consequently, Anderson directed United to furnish and install a track that was substantial enough to support the weight of the curtain at no extra cost to the government or to Anderson. United apparently installed another track and then requested that Capps credit its bill for the cost of the replacement track. Capps has taken the position that United is not due a credit. Anderson advised United that it would make no further payments to United on the contract until the dispute between United and Capps is settled

1. The language of that paragraph is as follows:

 The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above. This transaction constitutes entire agreement between buyer and seller and signature of buyer is acknowledgment of same. Failure to make payment within thirty days is basis for legal action to be taken, and buyer agrees to pay all court costs and reasonable attorney fees, and hereby waives all rights of exemption under

 the laws of the State of Alabama. 1½ Late Charge after 30 days.

2. Fed.R.Civ.P. 36(a) describes the proper use of requests for admission. This rule makes clear that once a party has properly served upon any other party a request for admission regarding a matter relevant to the case,

 [t]he matter is admitted unless, within 30 days after service of the request, ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

and Anderson receives formal notice of the settlement.

Fidelity employs Jack Pociask ("Pociask") as Managing Claims Attorney in its Atlanta, Georgia office. On March 3, 1994, Pociask received a letter from Capps' attorney, Robert Huie ("Huie"). Huie's letter informed Fidelity that Capps had a claim for unpaid labor and material on the Project. Documentation of the claim for payment accompanied Huie's letter. Pociask acknowledged receipt of the letter and informed Huie that Fidelity would contact Anderson about the claim. On March 21, 1994, Anderson wrote to Fidelity and advised Pociask that a dispute existed between Capps and United. Pociask reported this information back to Huie. Pociask continued to correspond with Anderson and Huie regarding the dispute between Capps and United. Pociask believes that a good faith dispute exists with respect to the Capps' claims.

On July 29, 1994, Anderson deposited with the clerk of the court $7,285.18, which Anderson characterizes as the amount claimed by Capps as the balance owed on the United/Capps contract. The parties do not dispute that the principal amount due on the United/Capps contract is $7,285.18. An affidavit from Capps' attorney puts reasonable attorney's fees and expenses for the pursuit of Capps' claim at $4,749.40. Capps also seeks prejudgment interest of 18% which as of October 24, 1994 was estimated to be $1,131.70.

## III. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interroga-

tories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–53.

■ Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See,* Fed.R.Civ.P. 56(c).

## IV. DISCUSSION

### A. The Miller Act

■ This lawsuit is based on the Miller Act which requires a contractor on a federal construction project to furnish a payment bond of a statutorily specified amount to secure payment to all suppliers of labor and material. 40 U.S.C. § 270a(a)(2). Section 270b of the Miller Act provides that on any federal construction project for which Section 270a requires the general contractor to furnish a payment bond to the United States, a

supplier who within ninety days after the last labor was performed or material delivered is not fully paid can sue on the bond upon giving notice to the general contractor. 40 U.S.C. § 270b(a). By statute, the payment bond must run to the benefit of the United States, and subcontractors and suppliers are permitted to sue on the bond in federal court in the name of the United States. 40 U.S.C. § 270b(b). This Act is "highly remedial in nature," and its terms should be liberally construed. *J.W. Bateson Co. v. U.S. ex rel. Board of Trustees,* 434 U.S. 586, 594, 98 S.Ct. 873, 877–78, 55 L.Ed.2d 50 (1978).

The Supreme Court explained the purpose and scope of the Miller Act in *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974).

> Section 270a(a)(2) of the Miller Act establishes the general requirement of a payment bond to protect those who supply labor or materials to a contractor on a federal project. Ordinarily, a supplier of labor or materials on a private construction project can secure a mechanic's lien against the improved property under state law. But a lien cannot attach to Government property, so suppliers on Government projects are deprived of their usual security interest. The Miller Act was intended to provide an alternative remedy to protect the rights of these suppliers.

> The rights afforded by the Act are limited, however, by the proviso of § 270b(a). In *MacEvoy Co. v. United States for Use and Benefit of Calvin Tomkins Co.* [322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944)], supra, this Court construed § 270b(a) to limit the protection of the Miller Act bond to those who had a contractual agreement with the prime contractor or with a 'subcontractor.'

*Id.* at 121–22, 94 S.Ct. at 2161 (citations omitted).

### B. Anderson's Motion for Summary Judgment

Anderson has taken the position that the most for which it could be liable to anyone in this suit is $7,285.18, the balance due on the contract between Capps and United.

Anderson deposited this amount with the Clerk of the Court, contending that this is a proper interpleader action and that such a deposit warrants its dismissal from the case. Anderson contends that the remaining disputes are between Capps and United and that Capps and United can litigate the issue of responsibility for the stage curtain problem without Anderson so long as the money is waiting for the victor.

Anderson further contends that Capps is not entitled to attorney's fees from Anderson because there is neither a contractual nor a statutory basis for such fees. In support of this position, Anderson relies on the fact that there was no contract between Anderson and Capps. Capps argues that the law of this circuit entitles it to recover attorney's fees and prejudgment interest and so Anderson cannot escape the suit by simply depositing the amount due on the United/Capps contract. In response, Anderson contends that the contract between United and Capps upon which Capps relies is ambiguous.

### 1. Attorney's fees

█ It is undisputed that the agreement between Capps and United contains the following language: "[f]ailure to make payment within thirty days is basis for legal action to be taken, and buyer agrees to pay all court costs and reasonable attorneys fees,...."

█ Anderson would have this court find that the language of the contract between Capps and United is ambiguous as a matter of law. The court declines to make this finding. The mere fact that a party contends that the contractual language is subject to more than one interpretation does not mean that the language is ambiguous. *Cannon v. State Farm Mut. Auto. Ins. Co.,* 590 So.2d 191, 194 (Ala.1991). Ambiguity exists where a term is reasonably subject to more than one interpretation. *Id.* The ambiguity of a contract is a matter of law for the court to decide. *Mass Appraisal Services, Inc. v. Carmichael,* 404 So.2d 666, 673 (Ala.1981). The court finds that the relevant provision in the United/Capps contract is not reasonably subject to more than one interpretation.

The issue raised by this contractual language is: does a contractual provision providing for attorney's fees which is found in a contract between a supplier and a subcontractor provide a basis for the supplier to recover attorney's fees in a suit under the Miller Act against the general contractor and its surety. The Eleventh Circuit has twice ruled on this very issue. *See, United States ex rel. Southern Mun. Supply Co. v. National Union Fire Ins. Co. of Pittsburgh,* 876 F.2d 92 (11th Cir.1989); *United States ex rel. Carter Equip. Co. v. H.R. Morgan, Inc.,* 554 F.2d 164 (11th Cir.1977) *modifying United States ex rel. Carter Equip. Co. v. H.R. Morgan, Inc.,* 544 F.2d 1271 (5th Cir.1977).[3] In both cases, the Eleventh Circuit held that in an action where there is a contractual provision between a supplier and a subcontractor for the recovery of attorney's fees, that provision is enforceable under the Miller Act against the contractor and its surety. *United States ex rel. Southern Mun. Supply Co.,* 876 F.2d at 93; *United States ex rel. Carter Equip. Co.,* 554 F.2d at 165–66.

*United States ex rel. Carter Equip. Co.,* is particularly salient to the disposition of this issue. In that case, a supplier had a contract with a subcontractor who later defaulted on the contract before the payment schedule had been completed. *United States ex rel. Carter Equip. Co.,* 544 F.2d at 1272–73. The supplier filed suit against the general contractor and its surety under the Miller Act. *Id.* The general contractor and its surety appealed from an adverse judgment arguing, *inter alia,* that the district court improperly awarded the supplier attorney's fees. *Id.* The Eleventh Circuit first ruled that the attorney's fees award was improper, but on a petition for rehearing the court reversed itself. *United States ex rel. Carter Equip. Co.,* 554 F.2d at 165–166. Noting that the Miller Act is to be construed with an eye toward the liberal purpose of the Act, the Eleventh Circuit quoted the sections of the Act that provides that every person who has not been paid in full for labor or materials furnished in the prosecution of work on the contract shall have the right to sue on the payment bond

for the sum or sums justly due him. *Id.* at 165. The court further noted that

[w]hile the statute does impose some additional notice requirements on persons having no direct contractual relationship with the general contractor, insofar as financial coverage of the bond is concerned, a supplier of the subcontractor is equally as entitled to be "paid in full" for "the sums justly due him."

*Id.* The court relied upon the provision in the contract between the supplier and the subcontractor which allowed for the supplier to recover reasonable attorney's fees and expenses incurred in the enforcement of the contract to find that attorney's fees were recoverable under the Miller Act bond as sums justly due. *Id.* at 166. This was so even though there was no contract between the general contractor and the supplier. The decision makes clear that this award was based on an application of purely federal law in accordance with *F.D. Rich Co.,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703.

Similarly in the instant suit, the contract between Capps and United provided for court costs and reasonable attorneys fees. United has refused to complete payment on the contract and Capps has instituted this lawsuit under the Miller Act. Clearly, the aforementioned authority allows Capps to sue Anderson and Fidelity for court costs and reasonable attorney's fees.

### 2. Prejudgment Interest

The appropriateness of awarding prejudgment interest on the amount due in a Miller Act suit is a matter of federal law. *United States ex rel. Seminole Sheet Metal Co. v. SCI, Inc.,* 828 F.2d 671, 677–78 (11th Cir.1987). The Eleventh Circuit has decided, however, that because the Miller Act does not provide any explicit standards for awarding prejudgment interest, the question should be answered by referring to state law. *Id.* at 678. Under Alabama law only liquidated claims ordinarily are subject to prejudgment interest. *E.C. Ernst, Inc. v. Manhattan Constr. Co. of Texas,* 551 F.2d 1026,

---

**3.** In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit held as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

1042 (5th Cir.1977), *cert. denied sub nom., Providence Hosp. v. Manhattan Constr. Co. of Texas,* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978). The Supreme Court of Alabama has held that the liquidated damages refers to the amount of damages ascertained by the judgment in the action or a specific sum of money expressly stipulated by the parties as the amount of damages to be recovered and includes damages which are reasonably ascertainable at time of breach, measured by a fixed or established external standard or a by standard apparent from documents upon which plaintiffs based their claim. *United States Fidelity & Guar. Co. v. German Auto, Inc.,* 591 So.2d 841, 843 (Ala.1991). Alabama law also provides for the award of prejudgment interest when the amount of damages is capable of being ascertained by mere computation and when the damages are complete at a particular time and can be determined as of such time in accordance with the rules of evidence and known standards of value. *See, Belcher v. Birmingham Trust Nat'l Bank,* 488 F.2d 474, 477 (5th Cir.1973). The parties do not dispute the amount of money which remains unpaid on the United/Capps contract. This sum is readily ascertainable from the submissions before the court. Thus, the damages at stake meet the definition of liquidated damages and Capps may recover prejudgment interest on the $7,285.18 which United failed to pay Capps.

### 3. Conclusion

In accordance with the foregoing authority, the court finds that Capps may recover the $7,285.18 due on the contract, prejudgment interest on that amount, court costs, and reasonable attorney's fees. The amount of money which Anderson deposited with the Clerk of the Court is inadequate to cover all of these items. Thus, Anderson's Motion for Summary Judgment is due to be DENIED.

### C. Fidelity's Motion for Partial Summary Judgment

Fidelity seeks summary judgment on Count Two of Capps' complaint. In Count Two, Capps seeks relief for Fidelity's alleged bad faith. Fidelity offers a file of correspondence which establishes that its Managing Claims Attorney, Pociask, kept in contact with Capps' attorney and with Anderson regarding the dispute from the time Fidelity first received notice of Capps' claim.

Capps argues that Fidelity intentionally failed to determine whether there was a legitimate or arguable reason to refuse to pay the claim. Capps contends that Alabama law allows a supplier to recover against the contractor's surety.[4] Moreover, Capps argues that the payment and performance bonds meet the definition of insurance under Alabama law and that Fidelity is liable for any bad faith. Capps urges this court to grant summary judgment in his favor on Count Two or in the alternative to send the issue to a jury.

■ The court begins its analysis of Count Two by noting that the jurisdictional basis of this suit is the Miller Act and not diversity. The court is not aware of the existence of any case brought under the Miller Act where a supplier or a subcontractor was allowed to recover damages for the surety's bad faith. Capps has not cited such a case to the court. Instead of providing the court with Miller Act cases on point, Capps relies upon an amalgam of Alabama law which he contends establishes his right to bring this claim against Fidelity. This is clearly inconsistent with the Supreme Court's determination that the remedies available in a Miller Act case are a matter of federal law. *F.D. Rich Co.,* 417 U.S. at 126, 94 S.Ct. at 2163 ("The Miller Act provides a federal cause of action and the scope of the remedy as well as the substance of the rights created thereby is a matter federal not state law.")

The bad faith claim for which Capps seeks recovery is a clearly state tort claim governed by Alabama law. The court notes that Capps does not allege that this court has supplemental jurisdiction to hear the state tort claim. Although the court finds that it is

---

4. The court notes that the cases upon which Capps relies for this proposition are state law contract cases concerning non-Miller Act mechanic's liens. Moreover, the cases say nothing about the availability of the tort of bad faith.

without jurisdiction under the Miller Act to determine the merits of this state law tort claim, the court acknowledges that the bad faith claim may be subject to this court's supplemental jurisdiction. After considering whether it should exercise supplemental jurisdiction over the state law claim, the court determines that it should not do so.

 Under the terms of the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5089, federal courts must employ supplemental jurisdiction unless there is a specific exception. 28 U.S.C. § 1367(a).[5] *Wiggins v. Phillip Morris, Inc.*, 853 F.Supp. 458, 469 (D.D.C.1994). However, subdivision (c) gives the court discretion to decline to exercise the supplemental jurisdiction in various circumstances. 28 U.S.C. § 1367(c) (1993). *See, Yeager v. Norwest Multifamily, Inc.*, 865 F.Supp. 768 (M.D.Ala.1994). One such exception is where the claim presents the federal court with "a novel or complex issue of State law ..." 28 U.S.C. § 1367(c)(1).

In 1981, the Alabama Supreme Court recognized that an insurer's "bad faith" is an actionable intentional tort. *See, Chavers v. National Sec. Fire & Casualty Co.*, 405 So.2d 1, 6 (Ala.1981). This case and the other bad faith cases cited by Capps in his brief, involve suits by an insured against the insurer for failure to settle a claim or failure to investigate a claim. Assuming that construction performance and payment bonds are sufficiently akin to the kinds of insurance contracts involved in these bad faith cases, the clear import of the availability of this tort remedy is that Anderson could sue Fidelity for a bad faith refusal to pay or to investigate a claim. Thus, Capps may be correct in his assertion that since the payment bond is a contract of insurance under Alabama statutory law, a cause of action for bad faith refusal of a surety to investigate or pay under the payment bond exists. However, Capps has not shown that he can bring this action. Capps has not established that he is a party to whom Fidelity owes a duty of good faith and that he can bring this tort claim against the surety. None of the cases Capps cites [6] establish that a state law action for bad faith exists for a supplier or materialman against a contractor's surety.

In this case, the state law claim asserted by Capps against Fidelity presents a novel and complex issue of state law. The claim is therefore properly resolved by a state tribunal. As a purely state cause of action, it is for the state to determine the availability of a claim for bad faith failure to investigate or settle a claim in a suit by a sub-subcontractor against the general contractor's performance and payment bond surety. The court will therefore decline to exercise supplemental jurisdiction and will dismiss this claim, without prejudice, for lack of subject matter jurisdiction. Therefore, Fidelity's Motion for Partial Summary Judgment is due to be GRANTED and Count Two of Capps' complaint is due to be DISMISSED without prejudice.

### D. Capps' Motion for Partial Summary Judgment

Capps notes that United has admitted that the principal amount is due on the contract and that Fidelity had not made a payment on its bond or otherwise offered a reason for nonpayment. Capps concludes that it is therefore due judgment against all defendants. The only issue Capps contends remains for trial is the amount of punitive damages owed by Fidelity for its bad faith. The court finds that Capps' Motion for Partial Summary Judgment is due to be GRANTED in part and DENIED in part.

#### 1. Count One

 Capps' Motion for Summary Judgment is due to be GRANTED on Count One

---

5. Section 1367(a) reads, "Except as provided in subsections (b) and (c) ... the District Courts shall have supplemental jurisdiction over all other claims that are so related to the claims within such original jurisdiction that they form part of the same case or controversy...."

6. In an effort to establish that a materialman or sub-subcontractor like Capps can sue the con-

tractor's surety for bad faith, Capps refers the court to *Security Fed. Savings & Loan Ass'n v. Underwood Coal & Supply Co.*, 245 Ala. 56, 16 So.2d 100 (Ala.1943) and *Fidelity & Deposit Co. of Baltimore v. Rainer*, 125 So. 55 (Ala.1929). These cases are inapposite. They are contract cases which were decided long before the tort of bad faith existed in this state.

as it applies to Anderson and Fidelity. A general contractor and its surety can be liable under the Miller Act to a subcontractor's supplier where the subcontractor has not paid the supplier. Capps offered undisputed evidence that he entered into a contract with United, a subcontractor, to supply tracks and drapery for a project covered by the Miller Act. Capps further demonstrated that he performed his contract obligations according to the specifications for the project and that United refused to complete payment.

Capps showed by undisputed evidence that neither Anderson, the general contractor on the project, nor its surety, Fidelity, paid the amount due. Finally, Capps established that the contract amount due was readily ascertainable and that the contract with United had a provision for attorney's fees. In light of these unrefuted proofs, the law in this circuit provides that Capps is entitled to judgment against these defendants for a sum including the unpaid amount due on the contract, prejudgment interest, court costs and reasonable attorney's fees.

Additionally, the court notes that defendants United and Howell have not submitted any argument or evidence in support of or in opposition to any of the pending motions for summary judgment. Capps seeks summary judgment against United and Howell on Count One. In view of Capps' evidentiary submissions the court finds that Capps is entitled to summary judgment on Count One against United and Howell and to summary judgment on the Counterclaim made by United for breach of contract. Thus, Capps' Motion for Summary Judgment is due to be GRANTED as it applies to United and Howell.

### 2. Count Two

The court's analysis of Fidelity's Motion for Summary Judgment leads the court to find that Capps is not entitled to summary judgment on Count Two.

### V. CONCLUSION

For the reasons stated above, the court finds that:

(1) Fidelity's Motion for Partial Summary Judgment is GRANTED, and Count Two is hereby DISMISSED without prejudice.

(2) Anderson's Motion for Summary Judgment is DENIED.

(3) Capps' Motion for Partial Summary Judgment is GRANTED against United, Howell, Anderson and Fidelity on Count One and DENIED as it applies to Count Two.

(4) the Court's rulings on the aforementioned motions dispose of all issues in this case but the amount Capps is due for court costs, reasonable attorney's fees, and interest. Capps is hereby DIRECTED to file a bill of reasonable attorney's fees and court costs as well as a proposed interest calculation by February 17, 1995. Defendants will have until February 24, 1995 to file any opposition to the amount or means of calculation.

(5) the pretrial hearing and trial previously scheduled are canceled.